## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOBILE DREDGING & VIDEO PIPE, INC., | )<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>)<br>) Civil Action No.: 3:25-cv-1564 (BKS/MJK) |
| SALL ASSOCIATES LTD. and<br>PRIDE MANOR HOLDINGS LLC, | )<br>)<br>) |
| Defendants. | )<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

Plaintiff Mobile Dredging & Video Pipe, Inc., by and through counsel and pursuant to 28 U.S.C. § 1332, states and alleges against Defendants Sall Associates LTD. and Pride Manor Holdings LLC, as follows:

### **The Parties**

1. Mobile Dredging & Video Pipe, Inc. ("MDVP") is a Pennsylvania Corporation duly organized and existing under the laws of Pennsylvania, with its principal office and place of business located at 3100 Bethel Road, Chester, Pennsylvania 19013. At all times relevant to this litigation, MDVP was and is registered and authorized to do business in the State of New York, in the nature of providing hydraulic dredging and dewatering, sewer system installation, repairs and maintenance, and water line inspection, labor, materials, equipment and services.

2. Defendant Sall Associates LTD. ("Sall"), is a New York Corporation duly organized and existing under the laws of the State of New York, with its principal place of business located at 80 Main Street, in the City of Binghamton, County of Broome, State of New York 13905. Sall is the property manager of Pride Manor, which is the owner of the construction project which is the subject of this lawsuit. Sall can be served at its principal place of business at 80 Main Street, Binghamton, New York 13905.

3. Defendant Pride Manor Holdings LLC ("Pride Manor") is a New York Limited-Liability Company duly organized and existing under the laws of the State of New York, with its principal place of business located at 1186 Hardscrabble Road, in the hamlet of Chappaqua, County of Westchester, State of New York 10514. Pride Manor is the owner of the construction project which is the subject of this lawsuit. Robert Kurens, member of Pride Manor, is a citizen of the State of New York. Upon information and belief, Pride Manor has no member that is a citizen of Pennsylvania.

**Jurisdiction and Venue**

4. This Court has jurisdiction over this civil action and the parties identified herein pursuant to 28 U.S.C. § 1332 because (a) this controversy is between citizens of different States; and (b) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue is proper in this District Court pursuant to 28 U.S.C. § 3191(b)(1) and (2), because Defendant Sall resides in Broome County, New York, which lies within the Northern Judicial District of the United States District Court of New York, and because a substantial part of the events giving rise to all of the claims occurred in Broome County, which is where Sall

breached the operative contract, and which is where Pride Manor received the benefit of MDVP's services.

## General Allegations

6. Pride Manor was and is the owner and maintainer of a wastewater treatment system ("WWTS") which includes a lagoon ("Lagoon"), located at the Pride Manor Mobile Home Park at 1832 Conklin Road, Conklin, Broome County, New York.

7. On or about September 6, 2023, MDVP and Sall entered into a written Dredging and Dewatering of Pride Manor WWTS agreement ("Contract") pursuant to which MDVP agreed to provide dewatering, dredging, and related labor, materials and services in connection with a project commonly known as Pride Manor, located at 1832 Conklin Road, Conklin, New York ("Project").

8. Pursuant to the Contract, MDVP was to dredge, dewater and dispose of sludge that it removed from the WWTS Lagoon located on the Project, pursuant to Specifications provided to MDVP by Sall. A true and genuine copy of the Contract, signed by Sall, is attached hereto as **EXHIBIT A** and incorporated herein by this reference.

9. In the Contract, MDVP expressly excluded and disclaimed any responsibility for structural failures or defects encountered during the dredging process or for corrections or repairs needed as a result of its work; and Sall expressly agreed to provide full access to the Lagoon in order for MDVP to perform its work.

10. The General Terms and Conditions to the Contract set forth MDVP's limitations of liability, expressly limiting MDVP's liability for existing conditions over which MDVP had no control or was not notified of.

11. Pursuant to the Contract, Sall was to pay MDVP $60,000 for the mobilization and set up, $956.83 per ton for the dredging and dewatering, $368.50 per ton for the transportation and disposal and $40,000 for the demobilization and teardown.

12. An engineer issued specifications governing the work, titled "Pride Manor Mobile Home Park Wastewater Treatment Systems Improvements," dated July 2022 and revised January 2023 (Hunt 3260-002) ("Specifications").

13. The Lagoon is approximately 12 feet deep in most locations.

14. The Specifications required MDVP to dredge by vacuum from a distance of 6" to 8" off of the bottom of the Lagoon (thus removing down to the last 4" to 6" of sludge), based on the engineer's statement that the aerators, baffles and lining could be damaged or disturbed if dredging occurred on the bottom surface of the Lagoon (which would be at an elevation of less than 4" off of the bottom of the Lagoon).

15. The Specifications and the Contract did not identify nor specifically disclose aerators located higher than 4" off of the bottom of the Lagoon, nor did Sall notify MDVP that there could be aerators at that location which would interfere with MDVP's access to the bottom of the Lagoon or otherwise interfere with MDVP's ability to perform its work at the Project.

16. MDVP performed its work at the Project utilizing the equipment set forth in the Contract, based on the Specifications provided by Sall, and pursuant to standards in the industry for undertaking the work that is the subject of the Contract.

17. During its work at the Project, in April 2024, MDVP discovered existing aeration lines that were greater than 4" from the bottom of the Lagoon, and brought this to Sall's and Pride Manor's attention on or about April 15, 2024. The locations of these existing lines were never disclosed to MDVP, as they should have been.

18. On April 16, 2024, Robert Kurens, an authorized representative of Pride Manor, responded with copy to Sall, directing MDVP to continue dredging as it had been doing, with knowledge that the existing aeration lines and baffles would or could be damaged. A true and genuine copy of the parties' communication is attached hereto as **EXHIBIT B** and is incorporated herein by this reference.

19. Upon information and belief, the Project was under pressure to get all of the dredging work completed by certain deadlines established by the Department of Environmental Controls.

20. On or about May 21, 2024, MDVP sent Invoice #44128 in the amount of $183,653.29 to Sall, for payment. A true and genuine copy of Invoice #44128 is attached hereto as **EXHIBIT C** and is incorporated herein by this reference.

21. On or about June 20, 2024, MDVP sent Invoice #44208 in the amount of $40,000 to Sall, for payment. A true and genuine copy of Invoice #44208 is attached hereto as **EXHIBIT D** and is incorporated herein by this reference.

22. Beginning in September 2024, MDVP reached out to Sall to request payment of the Invoices totaling $223,653.29, because they had not been paid as of that date.

23. On September 16, 2024, Larry Sall, on behalf of Sall, promised MDVP that it would be paid, and requested another copy of the Unpaid Invoices.

24. However, Sall paid only $100,000 towards the amounts owed to MDVP, but did not pay the remaining sums owed of $123,653.29 ("Unpaid Invoices"), despite MDVP's completion of the work and Sall's prior promise to MDVP that it would be paid.

25. This payment of $100,000 was paid by check to MDVP, dated September 25, 2024, titled "PRIDE MANOR HOLDINGS LLC C/O SALL ASSOCIATES, LTD.," thus indicating that both Pride Manor and Sall accepted that MDVP was owed money.

26. MDVP continued to follow up with Sall to request payment of the Unpaid Invoices, but Sall refused to pay MDVP despite MDVP's completion of the work and Sall's prior promise to MDVP that it would be paid.

27. Sall later created excuses for Pride Manor and/or Sall not paying the entire $123,653.29; but even with those excuses, which were unfounded, Sall acknowledged it still owed MDVP $53,653.29.

28. On February 4, 2025, MDVP made formal demand upon Sall to pay the Unpaid Invoices or, in the alternative to pay the undisputed sum owed which at that time was $53,653.29, reserving all rights to recover the remaining sum owed by Sall pursuant to the Unpaid Invoices ("Demand Letter").

29. Sall received the Demand Letter, but did not pay MDVP even the undisputed sum owed, as requested.

30. Upon information and belief, Pride Manor also received the Demand Letter.

31. Pursuant to the Credit Policy provisions of the Terms and Conditions of the Contract, Sall agreed that all the Unpaid Invoices are considered delinquent if not paid within thirty (30) days from receipt.

32. Pursuant to the Credit Policy provisions of the Terms and Conditions of the Contract, Sall agreed to pay 1.5% interest per month plus MDVP's attorney's fees on the Unpaid Invoices.

33. MDVP is still owed $83,653.29 on Invoice #44128; interest of 1.5% per month began to accrue on that amount on June 24, 2024.

34. MDVP is still owed $40,000 on Invoice #44208; interest of 1.5% per month began to accrue on that amount on July 20, 2024.

35. Interest on the Unpaid Invoices amounts will continue to accrue at the rate of 1.5% per month, until paid in full to MDVP.

36. Pursuant to the Credit Policy contained in the Municipal Proposal General Terms and Conditions of the Contract, Sall is also obligated to pay any costs or attorney's fees incurred in enforcing MDVP's rights or Sall's obligations arising from the Contract.

37. MDVP has incurred costs and attorney's fees in pursuing collection of the outstanding sums due and owing by Sall and Pride Manor, and those attorney's fees are continuing to accrue.

38. Sall and Pride Manor accepted MDVP's contractual performance after its completion and have enjoyed the benefit of MDVP's work, which Sall and Pride Manor have not paid for despite having received the Demand Letter and MDVP's numerous emails requesting payment.

39. MDVP has met all conditions precedent to the filing of this action.

## COUNT I
## (Breach of Contract)
## (Against Sall)

40. MDVP incorporates by this reference all preceding Paragraphs above as though the same were set forth herein.

41. MDVP and Sall entered into a valid and enforceable agreement, namely the Contract, pursuant to which MDVP agreed to supply labor, materials and services to or on behalf

of Sall as aforesaid. MDVP supplied the labor, materials and services to the Project, as instructed and directed by Pride Manor and/or Sall.

42. Sall agreed to pay MDVP the amounts billed for the work performed, as set forth in the Contract.

43. MDVP issued two invoices to Sall, namely Invoice #44128 and Invoice #44208, totaling $223,653.29, for the work it performed at the Project.

44. Sall agreed to the terms of the Contract, which required it to pay MDVP within 30 days from receipt of the Invoices.

45. MDVP has performed each and every obligation as required under its Contract with Sall.

46. Despite having received the Demand Letter and the benefit of MDVP's contracted-for work at the Project, Sall has not paid MDVP as promised.

47. MDVP is owed payment from Sall of the principal sum of $123,653.29, as reflected in the Unpaid Invoices, plus interest at the Contract rate of 1.5% from the date each invoice became overdue, plus its attorney's fees.

48. Sall has failed to perform its contractual obligations in that it has failed to pay the sums due and owing to MDVP for the labor, materials and services furnished to the Project, as reflected in the Unpaid Invoices, and therefore has breached the Contract.

49. MDVP has made numerous demands upon Sall for payment, including the demands set forth in the Demand Letter that Sall received, but Sall has failed and refused, and continues to fail and refuse to respond or to make payment to MDVP, as demanded.

50. Sall's breach of the Contract has resulted in damage to MDVP in the principal sum of $123,653.29; plus loss of use of its funds which is calculated at the pre-judgment interest of

1.5% per month beginning 30 days after the date each of the Invoices was received by Sall as aforesaid; plus MDVP's attorney's fees, all of which MDVP is entitled to recover under the terms of the Contract.

## COUNT II
### (Unjust Enrichment)
### (Against Pride Manor, in the Alternative to a Remedy at Law)

51. MDVP incorporates by this reference all preceding Paragraphs above, except for those of Count I, as though the same were set forth herein.

52. Pride Manor has been unjustly enriched at MDVP's expense.

53. MDVP did not enter into a contract with Pride Manor, and as such has no remedy at law against Pride Manor for this unjust enrichment.

54. Pride Manor was an intended third-party beneficiary of the Contract.

55. The Contract explicitly refers to Pride Manor, including as the "Owner" of the WWTS to which notice would be given, and states that MDVP's services were to be performed on the WWTS Lagoon at Pride Manor. See **Exhibit A.**

56. Pride Manor knew that Sall, Pride Manor's property manager, was contracting with MDVP to perform services to improve Pride Manor's Lagoon.

57. At all times relevant, representatives of Pride Manor were involved in the design and the work of MDVP. Pride Manor knew that MDVP was performing work on the Project, and knowingly benefitted from MDVP's work on the Lagoon.

58. Pride Manor was also required by environmental or other laws to perform the maintenance work on its Lagoon, and this was one of the reasons why MDVP's services were sought by Sall and Pride Manor.

59. Pride Manor thus anticipated and desired that Pride Manor would benefit from MDVP's work at the Lagoon.

60. Pride Manor knew that MDVP was performing work at the Lagoon at all times relevant.

61. For example, after MDVP duly notified Pride Manor that an aerator was found to be too high off of the bottom of the Lagoon, Robert Kurens, an authorized representative of Pride Manor, responded on April 16, 2024, with copy to Sall, directing MDVP to continue dredging as it had been doing, with knowledge that the existing aeration lines and baffles would or could be damaged. See **EXHIBIT B**.

62. Pride Manor thus knowingly and voluntarily accepted the performance of MDVP's services on the Project at Pride Manor's Lagoon.

63. The services that MDVP provided were necessary for Pride Manor's Lagoon to function properly and to meet environmental rules, regulations and/or other requirements governing its property.

64. The services that MDVP provided were necessary for Pride Manor, as owner and maintainer of the Lagoon, to be in compliance with applicable environmental or other law.

65. Pride Manor thus materially benefitted from MDVP's work, in obtaining a well-functioning and legally compliant Lagoon, whereas previously, Pride Manor had not had this.

66. Pride Manor acknowledged that MDVP had performed valuable services, by providing to Sall the aforementioned check worth $100,000, for Sall to sign and deliver to MDVP.

67. Pride Manor knowingly and voluntarily accepted the benefit of the performance of MDVP's services on the Project, worth the amounts on the Invoices.

68. Pride Manor was enriched by the unpaid invoiced amount of $123,653.29.

69. MDVP has been put to expense by the provision of services worth the invoiced amount.

70. Pride Manor has thus been enriched at MDVP's expense by retaining the value of MDVP's work without compensating MDVP.

71. Pride Manor has been put on notice, including by MDVP's repeated demands for payment, that MDVP has not been fully compensated for its work.

72. Upon information and belief, Sall provided the Demand to Pride Manor.

73. Upon information and belief, Sall forwarded other demands made by MDVP for payment, to Pride Manor.

74. Pride Manor is aware of the fact that MDVP expects payment, but it has failed and refused, and continues to fail and refuse, to respond or to make payment to MDVP, as demanded.

75. This enrichment was unjust and inequitable because it was obtained by not paying for services that Pride Manor wanted MDVP to perform, and because MDVP would not have provided these services if it knew that it would not be paid.

76. It is against equity and good conscience for Pride Manor to retain the benefits conferred on it by MDVP, without restitution to MDVP.

77. Pride Manor's unjust enrichment has resulted in damage to MDVP in the principal sum of $123,653.29; plus loss of use of its funds which is calculated at the statutory pre-judgment interest of 9% per annum beginning no later than 30 days after the date each of the Invoices was received by Sall as aforesaid; plus MDVP's attorney's fees.

## **Jury Demand**

78. MDVP demands trial by jury as to all issues so triable.

WHEREFORE, Plaintiff Mobile Dredging & Video Pipe, Inc., prays that this Court enter judgment in its favor and against Defendant Sall Associates LTD. for breach of contract, and against Defendant Pride Manor Holdings LLC for unjust enrichment, and award Plaintiff:

(a) The principal sum of $123,653.29; plus

(b) Pre-judgment interest at the contractual rate of 1.5% or the statutory rate of 9% on $83,653.29 beginning on June 24, 2024, and on $40,000 beginning on July 20, 2024, until judgment is entered in favor of Mobile Dredging & Video Pipe, Inc.; plus

(c) Attorney's fees incurred to collect the sums that Plaintiff Mobile Dredging & Video Pipe, Inc., is owed; plus

(d) Post-judgment interest until Plaintiff Mobile Dredging & Video Pipe, Inc., is paid in full all sums that it is owed; plus

(e) Any additional relief the Court deems just and proper.

Dated: New York, New York
November 5, 2025

Respectfully submitted,

MAZZOLA LINDSTROM LLP

_____
Jean-Claude Mazzola
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
646-250-6666
jeanclaude@mazzolalindstrom.com

*/s/ Heather F. Shore*
Heather F. Shore
*To be admitted pro hac vice*
2400 Pershing Road, Suite 500
Kansas City, Missouri 64108
816-471-2121
heather.shore@bakersterchi.com

**ATTORNEYS FOR PLAINTIFF
MOBILE DREDGING & VIDEO PIPE, INC.**

13