UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MOBILE DREDGING & VIDEO PIPE, INC.,

    Plaintiff,

v.

SALL ASSOCIATES LTD. AND PRIDE MANOR HOLDINGS, LLC,

    Defendants.

**ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

Civil Action No.:
3:25-cv-1564 (BKS/MJK)

---

Defendants Sall Associates LTD. ("Sall") and Pride Manor Holdings, LLC ("Pride Manor") by and through their attorneys Hinman, Howard & Kattell, LLP, hereby submit the following Answer to Plaintiff's Complaint:

1. Denied. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2. Admitted in part. Denied in part. The characterization of the work that is the subject of this lawsuit as a "construction project" is denied. The remaining allegations are admitted.

3. Admitted.

4. Paragraph 4 contains legal conclusions to which no response is required.

5. It is admitted only that Sall resides in Broome County, and the events giving rise to the subject matter of this lawsuit occurred in Broome County, which is in the Northern Judicial District of New York. The remaining allegations are denied or contain legal conclusions to which no response is required.

6. Admitted.

7. Denied. Mobile Dredging & Video Pipe, Inc. ("MDVP") and Sall did not enter into a contract.

8. Denied. Further, Exhibit A is a writing which speaks for itself, and any characterization thereof is denied.

9. Exhibit A is a writing which speaks for itself, and any characterization thereof is denied.

10. Exhibit A is a writing which speaks for itself, and any characterization thereof is denied.

11. Denied that Sall was to pay anything to Mobile Dredging. Further, the Contract (Exhibit A) is a writing which speaks for itself, and any characterization thereof is denied.

12. Admitted.

13. Denied. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 13.

14. Denied. The Specifications is a writing which speaks for itself, and any characterization thereof is denied. Defendants lack knowledge or information sufficient to form a belief as to the truth of the alleged statements by "the engineer."

15. The Specifications is a writing which speaks for itself, and any characterization thereof is denied. The remaining allegations contained in Paragraph 15 are denied.

16. Denied that Sall provided any Specifications. It is also specifically denied that MDVP performed work pursuant to standards in the industry. As to the remaining allegations, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17. Admitted only that MDVP acknowledged that they broke an aeration line on or about April 15, 2024. The remaining allegations contained in Paragraph 17 are denied.

18. Exhibit B is a writing which speaks for itself, and any characterization thereof is denied.

19. Admitted. By way of further answer, Pride Manor had no option to stop dredging because of DEC's requirement that it needed to be complete by May 10, 2024.

20. Exhibit C is a writing which speaks for itself, and any characterization thereof is denied.

21. Exhibit D is a writing which speaks for itself, and any characterization thereof is denied.

22. Admitted.

23. Denied.

24. Denied.

25. The check referenced in Paragraph 25 is a writing which speaks for itself, and any characterization thereof is denied.

26. Denied.

27. Denied.

28. Denied. The alleged "Demand Letter" is a writing which speaks for itself, and any characterization thereof is denied.

29. Denied.

30. Admitted.

31. Denied. Further, the Contract (Exhibit A) is a writing which speaks for itself, and any characterization thereof is denied.

32. Denied. Further, the Contract (Exhibit A) is a writing which speaks for itself, and any characterization thereof is denied.

33. Denied.

34. Denied.

35. Denied.

36. Denied. Further, the Contract (Exhibit A) is a writing which speaks for itself, and any characterization thereof is denied.

37. Denied that there are any outstanding sums due by either Sall or Pride Manor. Defendants lack knowledge or information as to whether MDVP has incurred any costs or attorney fees.

38. Denied.

39. Denied.

40. No response is required.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Admitted. By way of further answer, Sall has no obligation to pay MDVP.

50. Denied.

51. No response is required.

52. Denied.

53. Denied.

54. Denied.

55. Exhibit A (the Contract) is a writing which speaks for itself, and any characterization thereof is denied.

56. Denied.

57. Denied that Pride Manor benefited from MDVP's work on the Lagoon. The remaining allegations are admitted.

58. Admitted.

59. Admitted.

60. Admitted.

61. Denied that the aerator was too high off of the bottom of the Lagoon. Further, Exhibit B is a writing which speaks for itself, and any characterization thereof is denied.

62. Denied.

63. Admitted.

64. Admitted.

65. Denied.

66. The check (referenced in Paragraph 25) is a writing which speaks for itself, and any characterization thereof is denied.

67. Denied.

68. Denied.

69. Denied. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 69.

70. Denied.

71. Denied.

72. Admitted.

73. Admitted.

74. Admitted.

75. This allegation contains conclusions of law to which no response is required. The remaining allegations are denied.

76. Denied.

77. This allegation contains conclusions of law to which no response is required. The remaining allegations are denied.

78. No response is required.

## **AFFIRMATIVE DEFENSES**

79. MDVP's claims are barred in whole or in part based on their own contributory negligence.

80. Any money allegedly owed to MDVP is set off by money owed to Pride Manor.

81. MDVP fails to state cause of action as to Sall, as Sall was not a party to the Contract at issue.

82. MDVP's fails to state cause of action as to Pride Manor as MDVP entered into a contract with Pride Manor and thus has a remedy at law against Pride Manor.

83. MDVP failed to properly mitigate and/or minimize its alleged damages.

## COUNTERCLAIMS

### Factual History

84. Pride Manor owns and operates the Pride Manor Mobile Home Park in Conklin, Broome County, New York.

85. Sall Associates LTD ("Sall") is a property management company that manages a number of properties including Pride Manor Mobile Home Park.

86. The Pride Manor Mobile Home Park has a wastewater treatment system ("WWTS"), which includes a lagoon ("Lagoon").

87. The Lagoon contains an aerator, which is essential to the proper functioning of the WWTS. The aeration controls are in a small structure known as the Lagoon House.

88. The New York Department of Environmental Controls ("DEC") required Pride Manor to dredge 46 inches of sludge from the Lagoon to protect the nearby river, where the treated wastewater ultimately flows.

89. Pursuant to the DEC, the sludge was to be removed by May 10, 2024.

90. On September 6, 2023, Pride Manor contracted with MDVP to dredge, dewater and dispose of sludge removed from the waste management Lagoon to comply with the DEC requirements. (See Complaint, Exhibit A).

91. MDVP performed due diligence at the Lagoon.

92. Due to MDVP's delays in getting acceptance of materials, mobilization could not begin until April of 2024 instead of October 2023 as initially anticipated.

93. With regard to the dredging project at issue in this case, Sall's job was to facilitate communications between Pride Manor and MDVP, and to ensure the work was being done.

94. On April 14, 2024, one of Sall's employees (who also lives at Pride Manor Mobile Home Park) confirmed that the aeration system was working properly and the Lagoon House door was locked.

95. On or about April 15, 2024, while performing the dredging, MDVP's operator broke the aeration pipe in the Lagoon.

96. On April 15, 2024, Sall's employee noticed that the aeration system was no longer working, the Lagoon House was unlocked and the aeration system had been physically shut off.

97. Neither Sall's nor Pride Manor's employees unlocked the Lagoon House door and shut of the aeration system.

98. The damage to the aeration pipe caused the WWTS to stop functioning.

99. Without a working aeration system, the WWTS was not usable, resulting in Pride Manor having to hire tankers to transport the waste until the aeration system could be fixed.

100. Ultimately, the only viable fix was for Pride Manor to purchase a new aeration system that sits over the Lagoon at a cost in excess of $240,000.00

101. As a result of MDVP's actions, Pride Manor has incurred costs to replace the damaged aeration system and to address the consequential damage caused by the aeration systems failure.

## COUNT I - Negligence

102. Pride Manor repeats and realleges the preceding paragraphs as if fully set forth herein.

103. MDVP owed Pride Manor a duty of care to perform its work in a reasonably safe and competent manner that would not damage Pride Manor's property.

104. MDVP knew or should have known of the location of the aeration pipe.

105. MDVP breached this duty by damaging the aeration pipe in the WWTS.

106. MDVP failed to take reasonable precautions to avoid breaking the aeration pipe.

107. The operator for MDVP failed to provide services in a workmanlike manner and caused the aeration pipe to be damaged.

108. MDVP's breach of its duty of care was the direct and proximate cause of the damage to the aeration pipe and the resulting consequential damage.

109. As a direct and proximate result of MDVP's negligence, Pride Manor has suffered damages as set forth herein.

## COUNT II – Trespass to Chattels

110. Pride Manor repeats and realleges the preceding paragraphs as if fully set forth herein.

111. MDVP intentionally interfered with Pride Manor's possession of the aeration system.

112. Specifically, MDVP's operator and dredging equipment broke the aeration pipe.

113. MDVP's interference with Pride Manor's possession of the aerator was without Pride Manor's consent.

114. MDVP was specifically instructed to avoid the aeration pipe.

115. MDVP knew that breaking the aeration pipe would interfere with the operation of the aeration system, causing damage to Pride Manor.

116. As a result of MDVP's trespass to chattels, Pride Manor has suffered damages as set forth herein.

## DEMAND FOR RELIEF

WHEREFORE, Pride Manor respectfully requests that this Court enter judgment in favor of Pride Manor and against MDVP as follows:

A. Compensatory damages in an amount to be determined at trial for the cost of repairing or replacing the damaged aeration system;

B. Consequential damages in an amount to be determined at trial for additional losses resulting from the damaged aeration system;

C. Pre-judgment interest on a damages from the date of injury until the data of judgment pursuant to NY CLS CPLR § 5001;

D. Costs of this action pursuant to NY CLS CPLR § 8101; and

E.  Such other relief as the Court deems just and proper.

Dated: January 22, 2026  By: /s/ Jeanette
       Binghamton, New York

Jeanette N. Warren, Esq.
Jeffrey A. Jaketic, Esq.
Hinman, Howard & Kattell, LLP
*Attorneys for Defendants*
80 Exchange Street
PO Box 5250
Binghamton, New York 13902-5250
Telephone: (607) 723-5341
Facsimile: (607) 723-6605
jwarren@hhk.com
jjaketic@hhk.com