UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOBILE DREDGING & VIDEO PIPE, INC., | **ANSWER TO FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS** |
| Plaintiff, | |
| v. | Civil Action No.: 3:25-cv-1564 (BKS/MJK) |
| PRIDE MANOR HOLDINGS, LLC, | |
| Defendant. | |

Defendant, Pride Manor Holdings, LLC ("Pride Manor") by and through their attorneys, Hinman, Howard & Kattell, LLP, as and for their Answer to the Plaintiff's First Amended Complaint, responds as follows:

1. Denied. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2. Admitted in part. Denied in part. The characterization of the work that is the subject of this lawsuit as a "construction project" is denied. The remaining allegations are admitted.

3. Admitted.

4. Paragraph 4 contains legal conclusions to which no response is required.

5. It is admitted that Pride Manor resides in Broome County, and the events giving rise to the subject matter of this lawsuit occurred in Broome County, which is in the Northern Judicial District of New York. The remaining allegations are denied or contain legal conclusions to which no response is required.

6. Admitted.

7. It is admitted only that Sall is an authorized agent of Pride Manor. With respect to the Project, it is only admitted that Sall facilitated communications, and checked on the progress of the Project.

8. Admitted.

9. Admitted that MDVP sent a Dredging and Dewatering Agreement to Sall. The Agreement is a writing which speaks for itself, and any characterization thereof is denied.

10. Denied. Further, Exhibit A is a writing which speaks for itself, and any characterization thereof is denied.

11. Admitted that Robert Kurens returned the Contract to MDVP via email on September 6, 2023. The email and the contract (Exhibit A) are writings which speak for themselves and any characterization thereof is denied.

12. Admitted.

13. Admitted.

14. Exhibit A is a writing which speaks for itself, and any characterization thereof is denied.

15. Exhibit A is a writing which speaks for itself, and any characterization thereof is denied.

16. Exhibit A is a writing which speaks for itself, and any characterization thereof is denied.

17. Admitted.

18. Denied. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 18.

19. Denied. The Specifications is a writing which speaks for itself, and any characterization thereof is denied. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the alleged statements by "the engineer."

20. The Specifications is a writing which speaks for itself, and any characterization thereof is denied. The remaining allegations contained in Paragraph 20 are denied.

21. Denied that Sall provided any Specifications. It is also specifically denied that MDVP performed work pursuant to standards in the industry. As to the remaining allegations, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

22. Admitted only that MDVP acknowledged that they broke an aeration line on or about April 15, 2024. The remaining allegations contained in Paragraph 22 are denied.

23. Exhibit B is a writing which speaks for itself, and any characterization thereof is denied.

24. Admitted. By way of further answer, Pride Manor had no option to stop dredging because of DEC's requirement that it needed to be completed by May 10, 2024.

25. Exhibit C is a writing which speaks for itself, and any characterization thereof is denied.

26. Exhibit D is a writing which speaks for itself, and any characterization thereof is denied.

27. Admitted.

28. Admitted.

29. Denied.

30. Denied.

31. The check referenced in Paragraph 31 is a writing which speaks for itself, and any characterization thereof is denied.

32. Denied.

33. Denied.

34. Denied. The alleged "Demand Letter" is a writing which speaks for itself, and any characterization thereof is denied.

35. Denied.

36. Admitted.

37. Denied. Further, the Contract (Exhibit A) is a writing which speaks for itself, and any characterization thereof is denied.

38. Denied. Further, the Contract (Exhibit A) is a writing which speaks for itself, and any characterization thereof is denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied. Further, the Contract (Exhibit A) is a writing which speaks for itself, and any characterization thereof is denied.

43. Denied that there are any outstanding sums due by Pride Manor. Defendant lacks knowledge or information as to whether MDVP has incurred any costs or attorney fees.

44. Denied.

45. Denied.

46. No response is required.

47. Denied.

48. Denied.

49. Denied.

50. Denied. By way of further answer, the referenced invoices are writings which speak for themselves and any characterization thereof is denied.

51. Denied. The Contract (Exhibit A) is a writing which speaks for itself and any characterization thereof is denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Denied.

58. No response is required.

59. Denied.

60. This allegation contains conclusions of law to which no response is required. The remaining allegations are denied.

61. Denied.

62. Exhibit A (the Contract) is a writing which speaks for itself, and any characterization thereof is denied.

63. Denied.

64. Admitted only that MDVP communicated with Pride Manor about the Project.

65. Denied that Pride Manor benefited from MDVP's work on the Lagoon. It is admitted that Pride Manor hired an engineering firm that was involved in the design. It is also

admitted that Pride Manor knew MDVP was performing work on the Project, but denied that Pride Manor was involved in the work whatsoever.

66. Admitted.

67. Admitted.

68. Admitted.

69. Denied that the aerator was too high off of the bottom of the Lagoon. Further, Exhibit B is a writing which speaks for itself, and any characterization thereof is denied.

70. Denied.

71. Denied that the services provided by MDVP resulted in the Lagoon's proper function. It is only admitted that the services provided by MDVP were required to meet environmental rules and regulations.

72. Admitted. By way of further answer, because of MDVP's work, the Lagoon was not in compliance with environmental laws.

73. Denied.

74. The check (referenced in Paragraph 31) is a writing which speaks for itself, and any characterization thereof is denied.

75. Denied.

76. Denied.

77. Denied. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 77.

78. Denied.

79. Denied.

80. Admitted.

81. Admitted.

82. Admitted. By way of further answer, it is denied that MDVP is entitled to any payment.

83. This allegation contains conclusions of law to which no response is required. The remaining allegations are denied.

84. Denied.

85. This allegation contains conclusions of law to which no response is required. The remaining allegations are denied.

86. No response is required.

## AFFIRMATIVE DEFENSES

87. MDVP's claims are barred in whole or in part based on their own contributory negligence.

88. Any money allegedly owed to MDVP is set off by money owed to Pride Manor.

89. MDVP fails to state a cause of action for unjust enrichment against Pride Manor as MDVP entered into a contract with Pride Manor and thus has a remedy of law against Pride Manor.

90. MDVP failed to properly mitigate and/or minimize its alleged damages.

## COUNTERCLAIMS

### Factual History

91. Pride Manor owns and operates the Pride Manor Mobile Home Park in Conklin, Broome County, New York.

92. Sall Associates LTD ("Sall") is a property management company that manages a number of properties including Pride Manor Mobile Home Park.

93. The Pride Manor Mobile Home Park has a wastewater treatment system ("WWTS"), which includes a lagoon ("Lagoon").

94. The Lagoon contains an aerator, which is essential to the proper functioning of the WWTS. The aeration controls are in a small structure known as the Lagoon House.

95. The New York Department of Environmental Controls ("DEC") required Pride Manor to dredge 46 inches of sludge from the Lagoon to protect the nearby river, where the treated wastewater ultimately flows.

96. Pursuant to the DEC, the sludge was to be removed by May 10, 2024.

97. On September 6, 2023, Pride Manor contracted with MDVP to dredge, dewater and dispose of sludge removed from the waste management Lagoon to comply with the DEC requirements. (See Amended Complaint, Exhibit A).

98. MDVP performed due diligence at the Lagoon.

99. Due to MDVP's delays in getting acceptance of materials, mobilization could not begin until April of 2024 instead of October 2023 as initially anticipated.

100. With regard to the dredging project at issue, Sall's job was to facilitate communications between Pride Manor and MDVP, and to ensure the work was being done.

101. On April 14, 2024, one of Sall's employees (who also lives at Pride Manor Mobile Home Park) confirmed that the aeration system was working properly and the Lagoon House door was locked.

102. On or about April 15, 2024, while performing the dredging, MDVP's operator broke the aeration pipe in the Lagoon.

103. On April 15, 2024, Sall's employee noticed that the aeration system was no longer working, the Lagoon House was unlocked and the aeration system had been physically shut off.

104. Neither Sall's not Pride Manor's employees unlocked the Lagoon House door and shut off the aeration system.

105. The damage to the aeration pipe caused the WWTS to stop functioning.

106. Without a working aeration system, the WWTS was not usable, resulting in Pride Manor having to hire tankers to transport waste until the aeration system could be fixed.

107. Ultimately, the only viable fix was for Pride Manor to purchase a new aeration system that sits over the Lagoon at a cost in excess of $240,000.00.

108. As a result of MDVP's actions, Pride Manor has incurred costs to replace the damaged aeration system and to address the consequential damages caused by the aeration system's failure.

## COUNT I - Negligence

109. Pride Manor repeats and realleges the preceding paragraphs as if fully set forth herein.

110. MDVP owes Pride Manor a duty of care to perform its work in a reasonably safe and competent manner that would not damage Pride Manor's property.

111. MDVP knew or should have known of the location of the aeration pipe.

112. MDVP breached this duty by damaging the aeration pipe in the WWTS.

113. MDVP failed to take reasonable precautions to avoid breaking the aeration pipe.

114. The operator for MDVP failed to provide services in a workmanlike manner and caused the aeration pipe to be damaged.

115. MDVP's breach of its duty of care was the direct and proximate cause of the damage to the aeration pipe and the resulting consequential damage.

116. As a direct and proximate result of MDVP's negligence, Pride Manor has suffered damages as set forth herein.

## COUNT II - Trespass to Chattels

117. Pride Manor repeats and realleges the preceding paragraphs as if fully set forth herein.

118. MDVP intentionally interfered with Pride Manor's possession of the aeration system.

119. Specifically, MDVP's operator and dredging equipment broke the aeration pipe.

120. MDVP's interference with Pride Manor's possession of the aerator was without Pride Manor's consent.

121. MDVP was specifically instructed to avoid the aeration pipe.

122. MDVP knew that breaking the aeration pipe would interfere with the operation of the aeration system, causing damage to Pride Manor.

123. As a result of MDVP's trespass of chattels, Pride Manor has suffered damages as set forth herein.

## DEMAND FOR RELIEF

**WHEREFORE**, Pride Manor respectfully requests that this Court enter judgment in favor of Pride Manor and against MDVP as follows:

A. Compensatory damages in an amount to be determined at trial for the cost of repairing or replacing the damages aeration system;

B. Consequential damages in an amount to be determined at trial for additional losses resulting from the damages aeration system;

C. Pre-judgment interest on damages from the date of injury until the date of judgment pursuant to CPLR § 5001;

D. Costs of this action pursuant to CPLR § 8101; and

E. Such other relief as the Court deems just and proper.

Dated: Binghamton, New York
February 24, 2026

HINMAN, HOWARD & KATTELL, LLP

*(signature)*

Jeanette N. Warren, Esq.
Jeffrey A. Jaketic, Esq. (NDNY 303223)
*Attorneys for Defendant, Pride Manor Holdings, LLC*
80 Exchange Street
P.O. Box 5250
Binghamton, NY 13902-5250
Telephone: (607) 231-6742
Email: jjaketic@hhk.com
Email: jwarren@hhk.com